Cratsley, J.
This matter comes before this Court on defendants,’ William Clark, Gayle Clark, and Michael Thornton, motion for summary judgment on the issue of personal jurisdiction, pursuant to Mass.R.Civ.P. 56. The plaintiff, Shannon M., has filed through her father claims of medical negligence, sexual battery (as to defendant Michael Thornton), and negligent hiring and supervision (as to defendants William Clark and Gayle Clark). Based on an examination of the record and arguments of counsel on September 5, 2000, and for the reasons set forth below, the defendants’ motion for summary judgment is ALLOWED as to all three counts of the plaintiffs complaint.
BACKGROUND
Pursuant to the summary judgment record, the undisputed material facts are as follows:[1] In December 1998 the parents of the plaintiff, Shannon M., found out through a mutual friend about the Miracle Meadows School ("Miracle Meadows”) in Ritchie County, West Virginia, a facility for disturbed children operated by defendants, William and Gayle Clark. Mr. and Mrs. M. wrote to Miracle Meadows to inquire into the curriculum in December 1998 and later that same month Miracle Meadows mailed an information packet to Mr. and Mrs. M.
Upon receipt of this information packet, Mr. and Mrs. M. telephoned Miracle Meadows in December 1998 for further information regarding the fee for services, management of the school, and its curriculum. Plaintiff claims, and the issue is disputed,[2] that during this phone call one of the defendants, Gayle Clark, informed Mr. and Mrs. M. that a spot at Miracle Meadows would be opening in February of 1999, whereupon Mr. and Mrs. M. decided to enroll Shannon at Miracle Meadows. Plaintiff insists this enrollment was accepted over the phone by the defendant, Gayle Clark.
It is undisputed that on February 3, 1999, Shannon M. traveled with her parents to Miracle Meadows, at which time Mr. and Mrs. M. paid a sum in cash to Miracle Meadows for Shannon’s tuition, enrollment fees, and school uniform. Mr. and Mrs. M. made two additional tuition payments by check drawn from their Massachusetts checking account in March and April of 1999. On or around April 1, 1999, while being disciplined and in solitary confinement, Shannon M. alleges that she was sexually assaulted by defendant Michael Thornton, a 23-year-old employee at Miracle Meadows. Mr. and Mrs. M. subsequently removed their daughter from Miracle Meadows.
DISCUSSION
A. Summary Judgment Standard
A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.” Mass.R.Civ.P. 56(c); Nashua Corp. v. First State Ins. Co., 420 Mass. 196, 202 (1995). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). To defeat summary judgment, the nonmoving party must go beyond the pleadings and articulate specific facts demonstrating the existence of a genuine issue for trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).
B. Personal Jurisdiction
The issue of whether this Court may assert personal jurisdiction over the defendants involves a two-part inquiry. The first question is whether the Massachusetts longarm statute, G.L.c. 223A, is applicable to the case at bar. If so, the second question is whether such an exercise of jurisdiction is consistent with basic due process requirements mandated by the United States Constitution. Jurisdiction may be asserted only when both questions are answered in the affirmative. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Therefore, if jurisdiction is not authorized by the Massachusetts longarm statute, then a due process analysis is unnecessary. See Id. Plaintiff has the burden of proving that this Court has jurisdiction over defendants. Kleinerman v. Morse, 26 Mass.App.Ct. 819, 820 (1989).
The Massachusetts longarm statute, G.L.c. 223A, §3, provides in two relevant parts:
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from a person’s
*513 (a) transacting any business in this commonwealth;
(d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this commonwealth . . .
The crux of plaintiff s argument is that defendants “transacted business” in Massachusetts within the meaning of the long-arm statute. Section 3(a) has generally been construed broadly. See Sonnabend v. Sorrentino, 866 F.Sup. 651, 653 (D.Mass. 1994). However, this Court finds little evidence to support plaintiff s contention that this was anything more than an isolated transaction involving Massachusetts residents. Defendants never advertised in Massachusetts, nor did they actively solicit any business within the Commonwealth. In December 1998 Mr. and Mrs. M. contacted defendants William and Gayle Clark by mail to find out more information about Miracle Meadows. Defendants responded to this request by mailing out an information packet, and then a few weeks later Mr. and Mrs. M. once again initiated contact with defendant Gayle Clark, this time by phone.
The paucity of contacts with the Commonwealth is analogous to Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 153 (1978), where our Supreme Judicial Court held that the placement of an advertisement in a magazine which was distributed in Massachusetts, the receipt in Florida of a telephone call from the plaintiff in Massachusetts, the sending of correspondence to the Massachusetts plaintiff conflrming the sale, and the shipment of engines “collect” to the plaintiff in Massachusetts was insufficient to constitute a transaction of business so as to bring defendant within the scope of §3(a). In the instant case, plaintiff has alleged even fewer contacts with the forum state and thus, under the holding in Droukas, this Court finds as a matter of law that defendants did not “transact business” under §3(a) of the Massachusetts longarm statute.
Although there is a factual dispute over whether plaintiff was enrolled at Miracle Meadows over the telephone in December 1998 or upon her arrival at Miracle Meadows in February 1999, this Court finds that such a dispute is immaterial to the decision in this case. Even if, as plaintiff alleges, Shannon M. was enrolled during the December 1998 telephone conversation, under Droukas this isolated transaction would not confer jurisdiction over defendant Gayle Clark who was also on the telephone, and certainly not over defendants William Clark or Michael Thornton.
Plaintiffs reliance on Sonnabend v. Sorrentino, 866 F.Sup. 651 (D.Mass. 1994), to support her argument in favor of jurisdiction is misplaced. In that case, the United States District Court Judge held that shipping a forged painting into Massachusetts, combined with ordering the release of the painting to the third-party plaintiffs, was enough to satisfy the “transacting business” requirement of §3(a). Id. at 653. A mailing and a telephone call, both of which were initiated by the plaintiff, clearly do not rise to the level of Massachusetts contacts found in Sonnabend. Furthermore, the District Court Judge noted that “the third-party plaintiffs’ claims of breach of warranty and contribution directly relate to the third-parfy defendants’ transactions in Massachusetts.” Id. In the instant case, however, the basis for each count of plaintiffs complaint concerns events that allegedly took place entirely within West Virginia.
The other case upon which plaintiff principally relies, Energy Capital and Services LP. II v. Hill Refrigeration, Inc., 989 F.Sup. 353, 355 (D.Mass. 1997), holds that the defendant need not be physically present in the Commonwealth to “transact business” within the meaning of the Massachusetts long-arm statute. However, the United States District Court Judge noted that “the mere fact that a company in Massachusetts executes a contract with an entity in another state does not automatically mean that the foreign state ‘transacted business’ within the meaning of the statute.” Id. The District Court denied the defendant’s motion to dismiss on the grounds (1) that it had routinely directed communications into Massachusetts over a four-year time span, and (2) that the parties had set up an escrow account in a Massachusetts bank. Id. In this case, however, the plaintiff has not alleged similar or even sufficient contacts with the Commonwealth to support its argument that defendants “transacted business” under the Massachusetts longarm statute.
Plaintiff also contends that defendants caused her tortious injury in this Commonwealth by their acts or omissions in West Virginia, and that since defendants derived substantial revenue from the two tuition checks drawn upon Mr. and Mrs. M.’s Massachusetts checking account in March and April of 1999, this Court may assert jurisdiction under §3(d) of the MA longarm statute. Yet plaintiff cites no cases in support of this argument, and indeed the plain language of §3(d) refutes plaintiffs interpretation of it. While manifestations, effects, and consequences of an out-of-state injury may be experienced in Massachusetts, they do not constitute “injury in this commonwealth” within the meaning of §3(d). Cunningham v. Ardrox. Inc. 40 Mass.App.Ct. 279, 282 (1996), citing Crocker v. Hilton Int’l. Barbados. Ltd., 976 F.2d 797, 800 (1st Cir. 1992). Since a literal reading of §3(d) is dispositive of the jurisdictional issue, this Court need not address whether $2690, the total amount of the two tuition checks, constitutes “substantial revenue” under §3(d).
Plaintiff has not put forth sufficient evidence to place the defendants within the scope of the Massachusetts longarm statute, and therefore this Court need not inquire as to whether the exercise of jurisdic *514 tion is consistent with basic due process requirements. Good Hope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). Since there is no genuine issue as to any material fact, defendants are entitled to judgment as a matter of law.
ORDER
For the reasons stated herein, it is ORDERED that defendants’ motion for summary judgment is ALLOWED as to all three counts of the complaint.

The summary judgment record consists of the affidavits of William Clark, Gayle Clark, Michael Thornton, and Mr. and Mrs. M, along with attached exhibits.

Defendants assert that Shannon’s enrollment was not accepted until February 3, 1999.