Hanlon, J.
On July 26,2002, the Plaintiff, Cambridge-Lee Industries, Inc. (“Cambridge-Lee”), filed an action against the Defendant, Acme Refining Company (“Acme”). The dispute arose out of a bailment agreement whereby Acme agreed to receive, warehouse and ship certain scrap material for Cambridge-Lee at Acme’s warehouse in Chicago, Illinois.
On October 9,2002, Acme filed a motion to dismiss Cambridge-Lee’s complaint based on lack of personal jurisdiction pursuant to Mass. R. Civ. R, Rule 12(b) (2). After hearing and review, the trial judge denied Acme’s motion to dismiss on November 13,2002.
At the conclusion of the trial, Acme filed a motion for involuntary dismissal pursuant to Mass. R. Civ. R, Rule 41(b)(2). Both Acme and Cambridge-Lee filed requests for rulings of law pursuant to Mass. R. Civ R, Rule 64A. The Court found that Acme breached the terms of its agreement with Cambridge-Lee and assessed damages in the amount of $11,721.00. Judgment was entered for Cambridge-Lee on May 26, 2004. The total award was $14,466.12 with interest and costs. The Court found for Acme on the remaining counts of the complaint.
Acme subsequently filed this appeal, raising several issues of law in its notice of appeal. Because we agree with Acme that the complaint should have been dismissed based on a lack of personal jurisdiction, we need not address the remaining issues.

Factual Background

Acme is an Illinois corporation with a usual place of business in Chicago, Illinois. Acme’s business is the acquisition, transportation, processing and re-sale of scrap metal. Its six facilities are in the greater Chicago area. It does not operate any facilities outside of Illinois and serves manufacturers in the greater Chicago area. Acme neither conducts business in Massachusetts, nor operates facilities in Massachusetts, nor owns property in Massachusetts. It neither solicits business nor advertises its services in Massachusetts.
Cambridge-Lee, a supplier of brass rods and other metal components used in manufacturing, is a Massachusetts corporation with a corporate address in Alisten, Massachusetts. Cambridge-Lee also has an office in Alsip, Illinois. In 1997, personnel in Cambridge-Lee’s Alsip office approached certain individuals at Acme about entering into an agreement. The agreement would require Acme to collect scrap *141 metal from Cambridge-Lee’s customers in the Chicago area and to store the metal at Acme’s facilities for future sale by Cambridge-Lee. All communications, correspondence and discussions regarding this arrangement occurred between personnel in Acme’s Chicago offices and personnel in Cambridge-Lee’s Alsip office.
On January 16, 1998, Acme and Cambridge-Lee entered into that agreement: Acme would retrieve and store scrap metal from machine shops in the Chicago area, and would store the material for Cambridge-Lee at Acme’s Chicago facility. Larry C. Baron, Acme’s president, signed the agreement at Acme’s corporate offices in Chicago. The agreement provided that it was to be governed by and construed according to the laws of the Commonwealth of Massachusetts.
Pursuant to the terms of the agreement, Acme retrieved a number of loads of scrap material from mills and machine shops in the greater Chicago area, and took the materials to its facility. Acme weighed each shipment of scrap and reported the weight to Cambridge-Lee on invoices sent to Cambridge-Lee’s Illinois offices. Cambridge-Lee’s Illinois office then forwarded the invoices to its office in Massachusetts for payment to Acme.
During this period, Cambridge-Lee would periodically sell quantities of the scrap metal to its customers. It would arrange for a trucking company to pick up the load at Acme’s facility and to deliver it to the customer.
In May, 2001, a dispute arose about the total amount of scrap metal stored at Acme’s facilities. According to Acme, all of Cambridge-Lee’s scrap metal that had been stored at Acme’s facilities was sold by April, 2001. Cambridge-Lee believed that it had additional scrap metal left at the facility. Acme explained any discrepancy between the reported weight of the material delivered to it and the weight of the material shipped out to Cambridge-Lee’s customers as the natural drainage and evaporation of oil and other fluids from the pile of scrap material as it sat in storage.

Discussion

A Massachusetts court may exercise personal jurisdiction over a nonresident defendant under certain conditions that are specified in G.Lc. 223A, §3, the “long-arm” statute. Some basis for jurisdiction as set forth in the statute must be established before jurisdiction is conferred. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994); Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 5-6 (1979). If the statutory basis for jurisdiction has been satisfied, it must also be established that ‘“the exercise of jurisdiction under State law [is] consistent with basic due process requirements mandated by the United States Constitution.’” Tatro v. Manor Care, Inc., supra, quoting Good Hope Indus., Inc. v. Ryder Scott Co., supra at 5-6. The burden of establishing the basis for jurisdiction under G.Lc. 223A, §3 lies with the plaintiff. Tatro v. Manor Care, Inc., supra. In determining whether Cambridge-Lee has met its burden, “[w]e accept as true the uncontroverted allegations of fact taken from the materials before the motion judge.” Cunningham v. Ardrox, Inc., 40 Mass. App. Ct. 279, 279-280 (1996); see Windsor v. Windsor, 45 Mass. App. Ct. 650, 653 (1998).
Cambridge-Lee first asserts that this court may exercise personal jurisdiction over Acme pursuant to subsection 3(a) of the long-arm statute, which provides that “[a] court may exercise personal jurisdiction over a person... as to a cause of action ... arising from the person’s (a) transacting any business in this commonwealth.” G.L.c. 223A, §3(a). Acme’s response is that subsection 3(a) does not allow this court to exercise jurisdiction over it.
Two requirements must be satisfied in order for this court to assert jurisdiction over Acme pursuant to subsection 3(a). First, Acme must have transacted business in Massachusetts. Second, Cambridge-Lee’s claim must have arisen from the transaction of that business by Acme. See Tatro v. Manor Care, Inc., 416 Mass. at 767. In Tatro, the plaintiff was injured when she fell in the bathtub in her hotel *142 room in Anaheim, California, a hotel that had directly solicited the business of several Massachusetts residents, and, particularly, the council of which the plaintiff was a member. Id. at 765-766.
It is true that the “transacting any business” language in G.L.c. 223A, §3 (a) has been construed fairly broadly. Tatro v. Manor Care, Inc., supra at 767; Heins v. Wilhelm Loh Wetzlar Optical Mach. GmbH & Co. KG, 26 Mass. App. Ct. 14, 17 (1988). Thus, the purposeful and successful solicitation of business from residents of Massachusetts will generally satisfy this requirement; however, an isolated and minor transaction with a Massachusetts resident may be insufficient. Tatro v. Manor Care, Inc., supra; see also Sullivan v. Hotown N.V., 1998 Mass. App. Div. 106, 108 (Numerous and ongoing Massachusetts contacts between the plaintiff and the defendant, including an ongoing business relationship that covered a two-year period, were sufficient to confer jurisdiction over the defendant under G.L.c. 223A, §3 (a)). As noted, Acme is not a Massachusetts corporation, nor does it conduct business in Massachusetts, operate facilities in Massachusetts or own any property in Massachusetts. Acme does not solicit business or advertise its services in Massachusetts.
In addition, the activities that gave rise to the dispute under the agreement did not occur in Massachusetts or have any connection to Massachusetts. The parties negotiated and entered into the agreement in Illinois. The work that was required to be performed under the agreement occurred in Illinois, and Acme sent all invoices to Cambridge-Lee’s Illinois offices. The fact that Cambridge-Lee forwarded the invoices that it received in Illinois to its Massachusetts office does not constitute the transaction of business in Massachusetts by Acme under G.L.c. 223A, §3(a). Cf. Droukas v. Divers Training Academy, Inc., 375 Mass. 149, 15 (1978) (Where the defendant, whose principal place of business was Florida, placed an advertisement in a publication distributed in the Commonwealth, received a telephone call from the plaintiff, a Massachusetts resident, regarding the purchase of goods, sent correspondence to the plaintiff confirming the sale and shipped the goods to Massachusetts, the defendants contacts with Massachusetts were insufficient to constitute the transaction of business in Massachusetts under G.Lc. 223A, §3 (a)).
Cambridge-Lee cited several cases in support of its position that Acme is subject to the jurisdiction of a Massachusetts court; however, those cases have factors that are absent here. See, e.g., Hahn v. Vermont Law School, 698 F.2d 48, 49-50 (1st Cir. 1983) (defendanf s actions of mailing law school application information to plaintiff in Massachusetts and then mailing him an offer of admission); Carlson Corp. v. University of Vermont, 380 Mass. 102, 105-106 (1980) (defendant’s physical presence in Massachusetts to execute the contract out of which the cause of action arose); Connecticut Nat’l Bank v. Hoover Treated Wood Prods., Inc., 37 Mass. App. Ct. 231, 233-234 (1994) (defendant, Delaware corporation with a principal place of business in Georgia, made over thirty shipments of lumber to Massachusetts with an aggregate value of more than $375,000); Haddad v. Taylor, 32 Mass. App. Ct. 332, 335-336 (1992) (defendant's deliberate contacts with the plaintiff, who was in Massachusetts, through the mail and the telephone to negotiate a contract for the sale of real estate located in Massachusetts). Therefore, this Court holds that Acme did not transact business in Massachusetts as contemplated by G.L.C. 223A, §3 (a).
Next, Cambridge-Lee asserts that this court may exercise personal jurisdiction over Acme pursuant to subsection 3(d) of the long-arm statute, which provides that “[a] court may exercise personal jurisdiction over a person... as to a cause of action ... arising from the person’s ... (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.” G.L.c. 223A, §3(d). Acme argues that subsection 3(d) does not permit this court to exercise jurisdiction over it.
*143 In order for this court to assert jurisdiction over Acme under subsection 3(d) of the long-arm statute, Cambridge-Lee must first establish that Acme caused a tor-tious injury in Massachusetts by an act or omission that occurred outside of Massachusetts. G.L.c. 223A §3(d). Next, Cambridge-Lee must establish that Acme either regularly does or solicits business in Massachusetts, engages in a “persistent course of conduct” in Massachusetts or “derives substantial revenue” from goods that are used or consumed in Massachusetts or services rendered in Massachusetts. Id.
Even though a party may experience the effects and consequences of an out-of-state injury in Massachusetts, that party still does not satisfy the “injury in this commonwealth” requirement of G.L.c. 223A, §3(d) if the injury itself did not occur in Massachusetts. Cunningham v. Ardrox, Inc., 40 Mass. App. Ct. at 282. The scrap metal at issue in this matter was located in Illinois, and any injury that Cambridge-Lee may have suffered as a result of Acme’s storage of the scrap metal occurred in Illinois, and not in Massachusetts. Cambridge-Lee’s injury was not an “injury in [Massachusetts]” within the meaning of the long-arm statute.
In order to meet the requirements of G.L.c. 223A, §3 (d), Cambridge-Lee must also establish that Acme either regularly does or solicits business in Massachusetts, engages in a “persistent course of conduct” in Massachusetts or “derives substantial revenue” from goods that are used or consumed in Massachusetts or services rendered in Massachusetts. For the reasons set forth in the discussion of section 3 (a) of the long-arm statute, Cambridge-Lee has failed to establish that Acme engaged in persistent conduct in Massachusetts. In addition, even though Cambridge-Lee’s Illinois office forwarded the invoices to Cambridge-Lee’s Massachusetts office for payment to Acme, Acme’s services were rendered in Illinois. That the payments originate in Massachusetts is insufficient to satisfy the requirement of G.L.c. 223A §3 (d). See United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 38 (1st Cir. 1999). Therefore, this court holds that Cambridge-Lee has failed to establish that this court may exercise personal jurisdiction over Acme pursuant to G.L.c. 223A §3 (d).
Finally, the limited connections with Massachusetts asserted by Cambridge-Lee do not satisfy the Constitutional due process requirements for jurisdiction. This analysis begins with the question of whether Acme “purposefully established ‘minimum contacts’ in [Massachusetts].” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985), quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). A defendant cannot reasonably anticipate being subject to out-of-state litigation unless ‘“there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’” Burger King Corp., supra at 474-75, quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). The “purposeful availment” requirement ensures that no defendant will be haled into a foreign jurisdiction solely as a result of contacts that are random, fortuitous or attenuated. Burger King Corp., supra at 475, citing Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984). As stated previously, Acme did not engage in any such conduct. It could not reasonably anticipate being subject to a lawsuit in the Commonwealth.
Because we hold that there is no statutory or constitutional basis for jurisdiction over Acme, we need not address the remaining issues raised on appeal.
Accordingly, for the reasons stated above, the order denying Acme’s motion to dismiss for lack of personal jurisdiction that was entered on November 13,2002 is REVERSED. The judgment that was entered for Cambridge-Lee on May 26, 2004 is vacated, and a new judgment is to be entered for Acme.
So ordered.